**MARINE MIDLAND BANK, N.A., Plaintiff,**

v.

**Richard SCHLESINGER et al., Defendants,**

and

**Shearson Lehman Bros., Inc. f/k/a Shearson Lehman Hutton, Inc., Garnishee.**

**No. B–89–414 (TFGD).**

United States District Court, D. Connecticut.

May 3, 1993.

W. James Cousins, Roberts, Gaillard, Kambas, Cousins & Sweigart, Stamford, CT, for plaintiff.

Andrew P. Nemiroff, Epstein & Fogarty, Stamford, CT, for defendant Richard Schlesinger.

Lawrence J. Merly, Bridgeport, CT, for defendant Leslie Schlesinger.

William S. Rogers, Tyler, Cooper & Alcorn, Hartford, CT, for garnishee Shearson Lehman.

### RECOMMENDED RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT (# 98, # 120)

EAGAN, United States Magistrate Judge.

Shearson Lehman Brothers, Inc. f/k/a Shearson Lehman Hutton, Inc. ("Shearson"), the garnishee in this action, has moved the court to dismiss the verified application, or in the alternative, moves the court for summary judgment, and for an injunction prohibiting the enforcement of the judgment or prohibiting further proceeding against Shearson. Plaintiff, Marine Midland Bank, N.A. ("Marine"), has cross moved for summary judgment.

### I. Factual Background

For the purposes of the cross motions for summary judgment, the court finds that the following facts are not in dispute:

On August 1, 1989, Marine commenced an action against Richard Schlesinger on a guaranty seeking to recover $22 million. On August 2, 1989, Marine obtained from this court a garnishment of Shearson in the amount of $4 million as Shearson held property and funds of defendant Schlesinger. This property consisted of money market funds and a United States treasury bill. On August 7, 1989, Marine served the garnishment on Shearson. On August 8, 1989, Shearson filed an answer disclosing it held for and on the behalf of defendant Schlesinger an account with an approximate value of $426,867. Marine obtained a judgment order against Schlesinger for $2.5 million by stipulation on June 17, 1991. As part of the stipulation, Marine and Schlesinger agreed that the gar-

nished account had a value of $426,000, although at the time, the actual value of the account had decreased significantly.

Shearson had not allowed defendant Schlesinger to withdraw any securities, funds or other value from the account after garnishment. However, between the time of garnishment on August 2, 1989 and the demand and writ of execution on August 1, 1991, Shearson allowed trading in the garnished account. This trading, along with market forces, resulted in the drastic decrease in value of the account.

On August 1, 1991, Marine served Shearson with a demand and writ of execution. Shearson paid the executing officer the balance in the account, which consisted of $170,996, after paying $70,000 to itself for commissions from the account.

On August 12, 1991, Marine filed a Verified Application for an Order to Show Cause Why a Writ of Execution in the Nature of Scire Facias Should Not Issue. On November 14, 1991, Shearson filed its motion to dismiss the verified application. In support of its motion, Shearson argues: (1) the UCC statute, Conn.Gen.Stat. § 42a–8–317, authorized trading in the garnished account; (2) Shearson satisfied the judgment as to the account when it tendered the resultant value of the account to Marine; (3) Shearson cannot be bound by the value assigned in the Stipulation; and (4) Marine has waived any rights and is estopped from any claims regarding the decline in value of the account.[1]

In opposition to Shearson's motion, Marine maintains that: (1) under Conn.Gen.Stat. § 52–381, Shearson's trading in the garnished account renders Shearson liable for the value of the account as of the date of garnishment; (2) Conn.Gen.Stat. § 42a–8–317 does not protect Shearson's trading activities; (3) Shearson has not fully met its obligation as garnishee; and (4) Shearson has not set forth sufficient facts to establish its defenses of waiver or estoppel.

## II. Standard of Review

As a technical matter, the court will treat Shearson's motion as a motion for summary judgment. Marine has cross moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure outlines the standard to be followed by a court deciding a motion for summary judgment.

Upon a motion for summary judgment, the movant bears the burden of proving that no genuine issues of material fact exist which require additional evidence or testimony. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-movant is to be given the benefit of the doubt, and all factual inferences are to be interpreted in favor of the non-moving party. *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). Rule 56(c) mandates summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To determine exactly what facts are material to a particular claim, the court looks to the substantive law upon which that claim rests. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

## III. Discussion

### A. As a Matter of Law Shearson is Liable as a Garnishee Under Conn.Gen. Stat. § 52–381 for the Value of the Account as of the Date of Garnishment.

Connecticut law of garnishment applies to the present case. Marine argues that the Connecticut garnishment statute, Conn.Gen.Stat. § 52–381, controls here and renders Shearson liable as a matter of law for the amount by which Shearson as garnishee dissipated the garnished account due to the trading which Shearson allowed in that account. Conversely, Shearson argues that

---

1. The court finds that Shearson's final argument, that this court lacks jurisdiction over the matter in question because plaintiff must bring a separate scire facias proceeding, lacks merit, and therefore, the court need not address the argument.

the trading conducted in the account was authorized by the UCC Statute, Connecticut General Statute § 42a–8–317(5), and that it is not liable, therefore, for the decrease in value of the garnished account.

> Section 52–381 provides, in pertinent part: If judgment is rendered in favor of the plaintiff in any action by foreign attachment, all the effects in the hands of the garnishee at the time of the attachment, or debts then due from him to the defendant, and any debt, legacy or distributive share, due or to become due the defendant from any garnishee as an executor, administrator or trustee, shall be liable for the payment of such judgment. The plaintiff, on praying out an execution, may direct the officer serving the same to make demand of such garnishee for the effects of the defendant in his hands, and for the payment of any debt due the defendant, and such garnishee shall pay such debt or produce such effects, to be taken and applied on such execution. If [the garnishee] has in any manner disposed of the effects of the principal in his hands when the copy of the writ was left with him ... such garnishee shall be liable to satisfy such judgment out of his own estate.

Under this section, a garnishee holding property of the defendant is liable for its value as of the date of the garnishment, if the garnishee thereafter disposes of the property. Section 52–381 does not prevent a garnishee from disposing of the garnished property, but rather, imposes liability for its value if in fact the garnishee does dispose of the property. The question in the present case is whether Shearson is liable for the value of the garnished account pursuant to § 52–381

when Shearson traded the securities in the garnished account. If so, then Shearson would be liable for the value of the securities at the time of the garnishment.

Shearson contends that the provisions of the UCC Statute, § 42a–8–317, entitled "Creditors' rights," authorize the trading which it conducted in the garnished account.[2] Shearson relies on subsection (5), which provides:

> (5) Unless otherwise provided by law, a creditor's lien upon the interest of a debtor in a security obtained pursuant to subsection (3) or (4) is not a restraint on the transfer of the security, free of the lien, to a third party for new value; but in the event of a transfer, the lien applies to the proceeds of the transfer in the hands of the secured party or financial intermediary, subject to any claims having priority.

Conn.Gen.Stat. § 42a–8–317(5). Shearson argues that because this statute is specific to brokerage houses, it supersedes § 52–381 and allowed Shearson to continue trading in the account in the course of its ordinary business activities. Shearson would argue that this subsection, which was intended to protect creditors, benefits itself as a financial intermediary and allowed it to conduct trading in a garnished account without liability.

No caselaw exists which interprets subsection (5) of § 42a–8–317. Yet, the UCC Comment in reference to subsection (5) states that "subsection (5) is expressly subject to the procedural laws of the states, and no attempt has been made to prescribe the consequences of obtaining such a lien or the procedures for its enforcement." The law of the state of Connecticut which outlines the consequence of obtaining such a lien is set

---

**2.** Section 42a–8–317 provides the procedure by which a creditor may garnish both certificated and uncertificated securities. Subsection (4) provides:

> (4) The interest of a debtor in a certificated security that is in the possession of or registered in the name of a financial intermediary or in an uncertificated security registered in the name of a financial intermediary may be reached by a creditor by legal process upon the financial intermediary on whose books the interest of the debtor appears.

An uncertificated security is defined as:

> [A] share, participation, or other interest in property or an enterprise of the issuer or an

obligation of the issuer which is (i) not represented by an instrument and the transfer of which is registered upon books maintained for that purpose by or on behalf of the issuer; (ii) of a type commonly dealt in on securities exchanges or markets; and (iii) either one of a class or series or by its terms divisible into a class or series of shares, participations, interests or obligations.

Conn.Gen.Stat. § 42a–8–102(1)(b). The securities in issue in this case, money market funds and the United States treasury bill, are uncertificated securities.

forth in § 52–381. The language of § 52–381 is clear: if a garnishee disposes of the garnished property, it will be held liable for the value of the property at the time of garnishment. Because Shearson disposed of the property in the garnished account, it is, therefore, liable for the value of the property at the time the account was garnished. To interpret the UCC Statute, § 42a–8–317, to give a financial intermediary free reign to transfer securities in a garnished account without incurring any liability would defeat the purpose of § 42a–8–317 which is to protect the interests of a creditor[3], as well as, defeat the purpose of obtaining a garnishment in the first instance. To follow Shearson's interpretation of § 42a–8–317, a financial intermediary as garnishee, such as Shearson, would, in theory, be able to trade the value of an account down to nothing. Here, Shearson allowed the money market funds and the United States treasury bill, fairly stable, growing securities, to be traded for more volatile securities, resulting in the significant decrease in the value of the garnished account and in injury to the creditor, while Shearson profited by removing $70,000 worth of commissions from the account.

Therefore, the court finds that as a matter of law Shearson is liable to Marine, pursuant to Conn.Gen.Stat. § 52–381, for the value of the garnished account at the time of the garnishment because Shearson disposed of the garnished property by trading in the account.[4]

### B. Shearson Did Not Satisfy the Judgment When it Tendered the Account's Residual Value to Marine and the Value Assigned in the Stipulation is Not Determinative

 Shearson also argues that it has satisfied the judgment with regard to the garnished account because the Stipulation called merely for the conveyance of the value of the account and that the actual value of the account was irrelevant. Had Shearson simply held the account this might have been true. However, once Shearson traded in the garnished account, thus "disposing" of the garnished property, Shearson became liable to Marine for the value of the account as of the date of garnishment. Section 52–381 is clear that, if a garnishee disposes of the garnished property, such garnishee "shall be liable to satisfy such judgment out of his own estate" in an amount equal to the value of the account at the time of garnishment.

For the same reason, the value of the account as specified by the parties in the Stipulation is not determinative. Shearson claims it cannot be bound by the value assigned in the Stipulation between Marine and Schlesinger. However, Shearson misses the point. Shearson is being held to the consequences of its violation of a court ordered garnishment pursuant to § 52–381.

### C. Shearson has not set forth sufficient facts to establish its defense of estoppel.

Finally, the court addresses Shearson's claim that Marine has waived any rights and is estopped from any claims regarding the decline in value of the account.

 The well-established elements of estoppel and waiver are so similar that they are nearly indistinguishable. *S.H.V.C., Inc. v. Roy*, 188 Conn. 503, 450 A.2d 351 (1982). To prove a claim of estoppel, a party must show two essential elements: (1) the party against whom estoppel is claimed must do or

---

3. The UCC Comment with reference to subsection (4) of § 42a–8–317 states:

 [This] subsection provides that the debtor's account can be reached by process upon the entity upon whose books the interest of the debtor appears. This appears to be the most effective way of preventing the transfer of the debtor's interest and thus protecting the creditor. It is only that entity that is aware of the debtor's interest, irrespective of where the securities are located or in what name they happen to be registered.

4. In addition to trading in the account, Shearson also removed $70,000 worth of commissions. Shearson is liable for this amount of commissions which it took from the account. Shearson could not remove its commissions from the account at any time after the garnishment. *Vidal Realtors of Westport, Inc. v. Harry Bennett & Assocs., Inc.*, 1 Conn.App. 291, 297, 471 A.2d 658 (1984) (garnishee's role is like that of a trustee and he cannot derive personal profit from garnished property).

say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and (2) the other party must change its position or do some act to its injury which it otherwise would not have done. *John J. Brennan Constr. Corp. v. Shelton,* 187 Conn. 695, 711, 448 A.2d 180 (1982) (citation omitted).

▮▮▮ Shearson has alleged, in effect, that it is not responsible because Schlesinger ordered it to trade in the account and that Marine is estopped from making any claims against it because Marine knew about the trading and should have stopped it from doing so. Shearson's estoppel argument has no merit, first, because of this court's finding that Shearson is liable as a matter of law for the value of the account at the time of garnishment, and second, because Shearson has alleged insufficient facts to support its estoppel claim.

First, Shearson seeks to place any responsibility for the decline in the garnished account upon Marine because Shearson claims that Marine knew that its order did not prohibit trading, knew that Shearson was indeed trading, and did not take any action prevent the trading. However, Marine's knowledge is irrelevant. The burden was upon Shearson as garnishee to maintain the account. The garnishment did not prohibit Shearson from trading, but if Shearson did trade the account, § 52–381 set forth the liability of the garnishee where the garnishee has disposed of garnished property. This court has found that § 52–381 is the controlling statute here and that § 42a–8–317 did not authorize Shearson to trade the account without liability. Shearson cannot blame Marine for not stopping it from trading. Shearson itself is solely responsible as garnishee for the value of the garnished property.

Second, the evidence does not support Shearson's estoppel claim. Shearson must show that Marine knowingly intended to in-

duce Shearson to believe it had the right to trade in the account. This claim is contradicted by the evidence. In fact, on a number of occasions, Marine informed Shearson that it may be liable under Connecticut law for the value of the garnished account if it was trading in the account. On August 16, 1989, Marine, through its counsel, sent a letter to Shearson advising it that Shearson, as garnishee, stood as personal surety for Mr. Schlesinger and that any relinquishment of the garnished funds held by Shearson might render Shearson liable under Connecticut law.[5] In addition, the evidence shows that Marine, between the time of the garnishment on August 2, 1989 and the Demand and Writ of Execution on August 1, 1991, communicated with Shearson on approximately three occasions and advised Shearson that it would be held accountable for any unauthorized trading in the account, and reminded Shearson of this court's order garnishing the account. Counsel for Marine initiated each communication between the parties. Upon Marine's first inquiry about the account, on June 28, 1990, the senior legal assistant at Shearson informed counsel for Marine that the value of the account was $406,041.82. Affidavit of Margerita DiMolfetta at ¶ 11. It was not until December 18, 1990, Marine's second inquiry and more than a year after the court ordered garnishment, that Shearson informed Marine's counsel, at his request, that the value of the account had declined significantly to $193,523.10. *Id.* at ¶ 12. Marine's counsel again warned Shearson that it may be liable for the decline in the account. The senior legal assistant faxed a computer printout to Marine's counsel which reflected this value and which also read "ACCT FROZEN BY LAW 08/07/89." *Id.* at Exhibit B. In mid-June 1991, at about the same time as the Stipulation, Shearson again informed Marine of the value of the account upon inquiry by Marine and Marine once again advised Shearson that it may be liable for the decline in value of the account. "It is

---

5. We [ ] note that you have attempted to reserve the right to sell, give away, remove or otherwise dispose of Mr. Schlesinger's account 'in the ordinary course of business.' There is no such exception available under Connecticut law. You should be aware that [Shearson] as garnishee now stands as personal surety for

Mr. Schlesinger and *any* relinquishment of funds by [Shearson] without prior court authorization may render [Shearson] liable on its own account in *scire facias.*

Letter dated August 16, 1989 from Raymond L. Sweigart to Margherita DiMolfetta attached as Exhibit A to the Affidavit of Thomas Brennan.

fundamental that a person claiming an estoppel must show that he exercised due diligence to know the truth, and that he not only did not know of the true state of things but also lacked any reasonably available means of acquiring knowledge." *S.H.V.C.*, 188 Conn. at 511, 450 A.2d 351. The court notes that Shearson must have indeed known of the "true state of things" as reflected not only by the various communications with Marine's counsel but also by the fact it knew the account should have been frozen as stated in it's own computer printout. Shearson has not met its burden of alleging facts sufficient to support its defense of estoppel.

### IV. Conclusion

For the reasons stated herein, plaintiff Marine Midland's Cross Motion For Summary Judgment (# 120) is hereby GRANTED, and defendant Shearson Lehman Brother's Motion To Dismiss and For Order Prohibiting Enforcement of the Judgment or Further Proceedings Against Shearson (# 98) is DENIED. Any objections to this report and recommendation must be filed with the Clerk of Courts within ten (10) days of the receipt of this recommended ruling. Failure to object to this report and recommendation within ten (10) days will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; *Small v. Secretary of HHS*, 892 F.2d 15, 16 (2d Cir.1989).